UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CANDICE MUMMA, | : | C.A. NO. _____ |
| | : | |
| Plaintiff, | : | |
| | : | |
| V. | : | JULY 1, 2020 |
| | : | |
| PATHWAY VET ALLIANCE, LLC AND | : | |
| AND NATIONAL AVC, LLC D/B/A | : | |
| THRIVE AFFORDABLE VET CARE, | : | |
| | : | |
| Defendants. | : | |

## COMPLAINT

### I. PRELIMINARY STATEMENT

1. The Plaintiff, Candice Mumma (hereinafter "the Plaintiff" or "Mumma"), brings claims against her former employers, Defendants Pathway Vet Alliance, LLC (hereinafter "Pathway") and National AVC, LLC d/b/a THRIVE Affordable Vet Care (hereinafter "THRIVE"), for violations of Connecticut General Statutes § 31-51q, breach of contract, breach of the duty of good faith and fair dealing, negligent misrepresentation, intentional infliction of emotional distress, and negligent infliction of emotional distress.

2. The Plaintiff requests a trial by jury on all issues triable to a jury.

### II. JURISDICTION AND VENUE

3.      This Court has jurisdiction over this dispute pursuant to 28 U.S.C. § 1332 (diversity) because the parties are citizens of different states and the amount in controversy exceeds $75,000.

4.      This Court has jurisdiction over this dispute pursuant to 28 U.S.C. § 1331 (federal question) because Connecticut General Statutes § 31-51q implicates the protections afforded by the First Amendment to the United States Constitution.

5.      The Plaintiff also requests that this Court exercise supplemental jurisdiction over her state law claims pursuant to 28 U.S.C. § 1367.

6.      Pursuant to 28 U.S.C. § 1391(b)(2), venue is proper in this Court because the Plaintiff resides in Connecticut, was employed by the Defendants in Connecticut, and her actions that lead to the termination of her employment by the Defendants, which constitute a significant portion of the events that lead to this claims, occurred in Connecticut.

### III.    PARTIES

7.      The Plaintiff, Candice Mumma (hereinafter "the Plaintiff" or "Mumma"), is a resident of the State of Connecticut living at 162 Spencer Hill Road, Winsted, Connecticut.

8.      The Defendant, Pathway Vet Alliance, LLC (hereinafter "Pathway"), is a Delaware limited liability company with a principal business address at 800 West Cesar Chavez Street, B-100, Austin, Texas. Pathway provides veterinary management services.

{!02004583.DOCX; v.}2

SUISMAN, SHAPIRO, WOOL, BRENNAN, GRAY & GREENBERG, P.C.   THE COURTNEY BUILDING, SUITE 200, 2 UNION PLAZA, POST OFFICE BOX 1591
NEW LONDON, CONNECTICUT 06320    TEL. (860) 442-4416    JURIS NO. 62114

9. The Defendant, National AVC, LLC d/b/a THRIVE Affordable Vet Care (hereinafter "THRIVE"), is a Delaware limited liability company with a principal business address at 800 West Cesar Chavez Street, B-100, Austin, Texas. THRIVE provides small animal general practice veterinary care.

10. Pathway and THRIVE share common ownership and executive management teams.

11. Upon information and belief, THRIVE and Pathway are related corporate entities.

12. At all times relevant hereto, the Plaintiff was an "employee" of the Defendants as that term is defined under the Connecticut General Statutes.

13. At all times relevant hereto, THRIVE and Pathway were each an "employer" of the Plaintiff as that term is defined under the Connecticut General Statutes.

### IV. FACTS

14. On or about November 12, 2018, Mumma began working for THRIVE as a Veterinary Support Staff Recruiter.

15. Mumma worked remotely from her home in Connecticut and was paid as a full-time employee in Connecticut.

16. In her position, Mumma worked to recruit veterinary technicians and administrative employees on behalf of THRIVE.

17. Mumma also acted as THRIVE's primary college campus recruiter beginning in 2020.

{!02004583.DOCX; v.}3

SUISMAN, SHAPIRO, WOOL, BRENNAN, GRAY & GREENBERG, P.C.   THE COURTNEY BUILDING, SUITE 200, 2 UNION PLAZA, POST OFFICE BOX 1591
NEW LONDON, CONNECTICUT 06320   TEL. (860) 442-4416   JURIS NO. 62114

18. Mumma did not direct, manage or supervise any employees. Once employees she recruited were hired, she had no role in the direction, management, supervision or evaluation of those employees.

19. On or about, April 1, 2020, Mumma began to be paid by Pathway as opposed to THRIVE. Her job otherwise remained the same as it had immediately before that change in all respects.

20. During her tenure working for the defendants Mumma was never disciplined, her work product was not criticized, and she received nothing but positive reviews and feedback concerning her work.

21. Mumma is open about being conservative politically and a practicing Christian.

22. One of the Plaintiff's direct supervisors was Christine Moore.

23. Moore advised Mumma on various occasions that all employees were free to express their personal and political views in the workplace.

24. Shortly after Mumma began her employment, Moore held a dinner party at her home at which Mumma and other employees of the Defendants discussed political and personal opinions about current affairs.

25. Mumma was encouraged to express her opinions.

26. Many of Mumma's coworkers, including Moore, are politically liberal.

{!02004583.DOCX; v.}4

SUISMAN, SHAPIRO, WOOL, BRENNAN, GRAY & GREENBERG, P.C.   THE COURTNEY BUILDING, SUITE 200, 2 UNION PLAZA, POST OFFICE BOX 1591
NEW LONDON, CONNECTICUT 06320   TEL. (860) 442-4416   JURIS NO. 62114

27. Many of Mumma's coworkers actively post, forward and share politically liberal social media messages.

28. Included among those who post politically and socially liberal social media memes, Tweets, and stories to their personal accounts are executives ranging from the Plaintiff's direct supervisor to the co-founder of both of the Defendants.

29. Those posts are often linked to the Defendants social media pages or include direct references to the Defendants.

30. Those posts and memes include numerous examples of explicit anti-Trump, anti-Republican, anti-Christian, and anti-religion statements that are, or could be, offensive to supporters of the President, Republicans, conservatives, Christians, and members of other religions.

31. The Plaintiff, along with other employees, was encouraged to use her personal Facebook page to promote the Defendants and solicit recruitment candidates.

32. During her employment, Mumma was a social media "friend" to coworkers, including Moore.

33. On June 9, 2020, Mumma posted a meme on her personal Facebook page that stated "No wonder Liberals are so confused" and had eight boxes below.

34. Each of the eight boxes had a picture of a different prominent figure with a word in each box: Rachel Dolezal – Black; Elizabeth Warren – Indian; Caitlyn Jenner – Woman; Al

SUISMAN, SHAPIRO, WOOL, BRENNAN, GRAY & GREENBERG, P.C.   THE COURTNEY BUILDING, SUITE 200, 2 UNION PLAZA, POST OFFICE BOX 1591
NEW LONDON, CONNECTICUT 06320   TEL. (860) 442-4416   JURIS NO. 62114

Sharpton – Reverend; Al Gore – Scientist; George Stephanopoulos – Journalist; Barack Obama – Presidential; and Bill Clinton – Husband.

35. Mumma's Facebook page is not associated in any way with either defendant or her employment with either company.

36. On June 11, 2020, Mumma received a text message indicating that she needed to attend a Microsoft Teams remote meeting at 3:00 pm EST.

37. Also attending that meeting with the Plaintiff were Rachel Kelley-Valles, one of Mumma's supervisors, as well as a Vice President of Human Resources, Tracey Shields.

38. Mumma was advised that a complaint had been filed by another employee related to the meme she posted.

39. Apparently, the employee who filed the complaint was "offended" by the meme.

40. Despite the explicit political nature of the meme, Mumma was advised that the discussion was "not about her political views."

41. Instead, Mumma was told that the meme "could be interpreted as offensive."

42. More specifically, Mumma was advised that use of the term "Indian" was inappropriate and that the appropriate term is "Native American."

43. Mumma noted to them the irony of the fact that THRIVE owns a veterinary hospital called "THRIVE Indian Land Hospital."

{!02004583.DOCX; v.}6

SUISMAN, SHAPIRO, WOOL, BRENNAN, GRAY & GREENBERG, P.C.   THE COURTNEY BUILDING, SUITE 200, 2 UNION PLAZA, POST OFFICE BOX 1591
NEW LONDON, CONNECTICUT 06320   TEL. (860) 442-4416   JURIS NO. 62114

44. The Indian reference refers specifically to United States Senator Elizabeth Warren's use of the term "American Indian" to describe her heritage, a point of significant political discussion since Senator Warren first ran for the Senate in 2012 and increasing discussion when she mounted a campaign for the Democratic nomination for President.

45. Mumma was also advised that her use of the term "woman" in reference to Caitlyn Jenner could indicate that "you could have a problem with Caitlyn being a woman."

46. Caitlyn Jenner is a transgender woman whose transition from male to female has been a significant topic of political and social discussion since she first announced her transition in or around April 2015.

47. In closing the meeting, Mumma was advised that they would be following up either later that day or the following day.

48. On June 12th, the following day, Mumma received an invite to another Microsoft Teams remote meeting, which took place at 11:00 am EST.

49. In attendance at that meeting were Mumma, Shields and Moore.

50. Moore explained that Pathway and THRIVE "value diversity and inclusivity."

51. Moore and Shields conceded to the Plaintiff that there was no evidence of bias by Mumma in the workplace.

52. Nonetheless, Moore read from a prepared statement and advised Mumma that she was terminated due to the posting of the meme.
{!02004583.DOCX; v.}7

SUISMAN, SHAPIRO, WOOL, BRENNAN, GRAY & GREENBERG, P.C. THE COURTNEY BUILDING, SUITE 200, 2 UNION PLAZA, POST OFFICE BOX 1591
NEW LONDON, CONNECTICUT 06320    TEL. (860) 442-4416    JURIS NO. 62114

## V.   FIRST COUNT: (VIOLATION OF C.G.S. § 31-51q)

1-52.   Paragraphs 1-52 of the Complaint are hereby realleged and incorporated herein as paragraphs 1-52 of this First Count.

53.   The Plaintiff engaged in constitutionally protected activity when she posted the meme on Facebook.

54.   Connecticut General Statutes section 31-51q states that "[a]ny employer, including the state and any instrumentality or political subdivision thereof, who subjects any employee to discipline or discharge on account of the exercise by such employee of rights guaranteed by the first amendment to the United States Constitution or section 3, 4 or 14 of article first of the Constitution of the state, provided such activity does not substantially or materially interfere with the employee's bona fide job performance or the working relationship between the employee and the employer, shall be liable to such employee for damages caused by such discipline or discharge, including punitive damages, and for reasonable attorney's fees as part of the costs of any such action for damages."

55.   The First Amendment to the United States Constitution states that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."

{!02004583.DOCX; v.}8

SUISMAN, SHAPIRO, WOOL, BRENNAN, GRAY & GREENBERG, P.C.   THE COURTNEY BUILDING, SUITE 200, 2 UNION PLAZA, POST OFFICE BOX 1591
NEW LONDON, CONNECTICUT 06320   TEL. (860) 442-4416   JURIS NO. 62114

56. Section 3 of Article First of the Connecticut Constitution states that "[t]he exercise and enjoyment of religious profession and worship, without discrimination, shall forever be free to all persons in the state[.]"

57. Section 4 of Article First of the Connecticut Constitution states that "[e]very citizen may freely speak, write and publish his sentiments on all subjects, being responsible for the abuse of that liberty."

58. Section 14 of Article First of the Connecticut Constitution states that "[t]he citizens have a right, in a peaceable manner, to assemble for their common good, and to apply to those invested with the powers of government, for redress of grievances, or other proper purposes, by petition, address or remonstrance."

59. The Plaintiff's posting of the meme at issue was an exercise of her rights protected by the First Amendment to the United States Constitution and Sections 3, 4, and 14 of Article First of the Connecticut Constitution

60. The Plaintiff's speech was undertaken outside of her normal duties of the positions she held with the Defendants at the time the speech was undertaken.

61. The Plaintiff's speech caused no substantial or material interference with corporate business in that:

    a. the statement(s) caused no business disruption;

    b. the statement(s) caused no loss of revenue or productivity; and

SUISMAN, SHAPIRO, WOOL, BRENNAN, GRAY & GREENBERG, P.C.   THE COURTNEY BUILDING, SUITE 200, 2 UNION PLAZA, POST OFFICE BOX 1591
NEW LONDON, CONNECTICUT 06320   TEL. (860) 442-4416   JURIS NO. 62114

      d.    the statement(s) caused no impact to the Plaintiff's work performance.

62.    Immediately after engaging in constitutionally protected speech, the Defendants, through their supervisors retaliated against the Plaintiff by terminating her employment.

63.    The Defendant's decision to terminate the Plaintiff was based upon her engaging in Constitutionally protected activity and/or protected speech.

64.    The Defendant's decision to terminate the Plaintiff's employment was in violation of Connecticut General Statutes § 31-51q.

65.    The Plaintiff has been caused to suffer damages due to the Defendant's wrongful discharge in the form of lost wages and benefits, future pay and benefits, punitive damages, emotional distress and attorneys' fees.

## VI.    SECOND COUNT: (BREACH OF CONTRACT)

1-65.    Paragraphs 1-65 of the Complaint are hereby realleged and incorporated herein as paragraphs 1-65 of this Second Count.

66.    An understanding and/or agreement existed between the Plaintiff and the Defendants that each would abide by the terms and conditions set forth in the THRIVE Employee Handbook and that the provisions of said Handbook would govern the terms and conditions of employment.

67.    Pathway maintains an essentially identical handbook (referred to herein collectively with the THRIVE Employee Handbook as the "Handbook") with the same provisions.

{!02004583.DOCX; v.}10

SUISMAN, SHAPIRO, WOOL, BRENNAN, GRAY & GREENBERG, P.C.   THE COURTNEY BUILDING, SUITE 200, 2 UNION PLAZA, POST OFFICE BOX 1591
NEW LONDON, CONNECTICUT 06320    TEL. (860) 442-4416    JURIS NO. 62114

68. The Handbook's Open Door policy states that "THRIVE believes that open communication is essential to a successful work environment and all employees should feel free to raise issues of concern without fear of reprisal."

69. The Handbook's Professional Environment policy states that "Our work environment is such that many individuals interact with each other every day. Differences of opinion, discomfort with personality traits and even anger are inevitable. Please understand that those types of reactions do not generally amount to sexual harassment. THRIVE wants our workplace to be both interactive and professional. Tolerance of others is encouraged."

70. The Handbook's Employee Conduct policy lists dozens of examples of conduct that is inappropriate, none of which includes the acts of the Plaintiff that lead to her termination.

71. The Handbook includes a progressive discipline policy that was not applied to the plaintiff.

72. The Defendants breached their contractual promises to the by failing to apply these policies and in terminating her employment for exercising the rights provided therein.

73. The Defendants breached their obligation with regard to discipline when it terminated the Plaintiff for speech outside of the workplace.

74. The Plaintiff has been cause to suffer damages as a result of the breach of contract in the form of lost wages and benefits, future pay and benefits, costs and attorneys' fees.

{!02004583.DOCX; v.}11

SUISMAN, SHAPIRO, WOOL, BRENNAN, GRAY & GREENBERG, P.C.   THE COURTNEY BUILDING, SUITE 200, 2 UNION PLAZA, POST OFFICE BOX 1591
NEW LONDON, CONNECTICUT 06320   TEL. (860) 442-4416   JURIS NO. 62114

## VII. THIRD COUNT: (BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING)

1-74.   Paragraphs 1-74 of the Second Count are hereby realleged and incorporated herein as paragraphs 1-74 of this Third Count.

75.   Inherent in every contract is a duty of good faith and fair dealing.

76.   The Defendant breached its duty of good faith and fair dealing by undertaking discretionary acts of discipline against the plaintiff in violation of the terms of the Handbook between the parties or the spirit of the agreement.

77.   In undertaking those acts, the Defendant acted in bad faith.

78.   The Plaintiff has been caused to suffer damages as a result of the breach of the duty of good faith and fair dealing in the form of lost wages and benefits, future pay and benefits, costs and attorneys' fees, emotional distress and loss of reputation.

## VIII. FOURTH COUNT: (NEGLIGENT MISREPRESENTATION)

1-65.   Paragraphs 1-65 of the Complaint are hereby realleged and incorporated herein as paragraphs 1-65 of this Fourth Count.

79.   The Defendants made numerous representations of fact to the Plaintiff that were false and misleading, including assuring the Plaintiff that she was free to express her political and personal opinions in the workplace and otherwise without repercussions.

80.   The Defendant knew or should have known that these representations were false.

{!02004583.DOCX; v.}12

SUISMAN, SHAPIRO, WOOL, BRENNAN, GRAY & GREENBERG, P.C.   THE COURTNEY BUILDING, SUITE 200, 2 UNION PLAZA, POST OFFICE BOX 1591
NEW LONDON, CONNECTICUT 06320   TEL. (860) 442-4416   JURIS NO. 62114

81. The Plaintiff reasonably relied upon these representations.

82. The Plaintiff suffered pecuniary harm as a result of her reliance on those representations.

83. The Plaintiff has been caused to suffer damages as a result of the negligent misrepresentations in the form of lost wages and benefits, future pay and benefits, costs and attorneys' fees, emotional distress and loss of reputation.

IX. **FIFTH COUNT:** (INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS)

1-65. Paragraphs 1-65 of the First Count are hereby realleged and incorporated herein as paragraphs 1-65 of this Fifth Count.

84. During the meeting on June 11, 2020, the Defendants representatives demanded that Mumma refute or repudiate the positions she had expressed in the posted Facebook meme.

85. Mumma was accused of causing harm to others based solely on the exercise of her Constitutional rights.

86. During her tenure working for the Defendants, Mumma was exposed to numerous social media posts, memes, Tweets, and other discussions among employees that were personally offensive to her religious, social and political beliefs.

{!02004583.DOCX; v.}13

SUISMAN, SHAPIRO, WOOL, BRENNAN, GRAY & GREENBERG, P.C.   THE COURTNEY BUILDING, SUITE 200, 2 UNION PLAZA, POST OFFICE BOX 1591
NEW LONDON, CONNECTICUT 06320   TEL. (860) 442-4416   JURIS NO. 62114

87. She endured those personally offensive statements because she understood that the Defendants' employees were allowed to express their personal, social, political, and religious viewpoints without fear of reprisal or discipline.

88. She was disheartened and distressed to learn that, in fact, only employees who maintained certain accepted social, political, and/or religious viewpoints were allowed to express those viewpoints without fear of reprisal or discipline.

89. In order to maintain her employment, the Defendants demanded that Mumma refute her personal, religious and political views that did not comport with the accepted ideology of the Defendants.

90. Mumma refused to do so and was terminated as a result thereof.

91. The Defendants' conduct extends beyond the bounds of decency acceptable in any place of employment.

92. The Defendants' extreme and outrageous conduct occurred in the course of the Plaintiff's termination from employment.

93. The Plaintiff has been caused to suffer severe emotional distress as a result of the Defendant's conduct which includes loss of sleep, anxiety, depression, traumatic stress, mental pain and anguish.

X. **SIXTH COUNT: (NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS)**

{!02004583.DOCX; v.}14

SUISMAN, SHAPIRO, WOOL, BRENNAN, GRAY & GREENBERG, P.C.   THE COURTNEY BUILDING, SUITE 200, 2 UNION PLAZA, POST OFFICE BOX 1591
NEW LONDON, CONNECTICUT 06320   TEL. (860) 442-4416   JURIS NO. 62114

1-65. Paragraphs 1-65 of the Complaint are hereby realleged and incorporated herein as paragraphs 1-65 of this Sixth Count.

94. The Defendant's acts and/or omissions as set forth above were extreme and outrageous and created an unreasonable risk of causing the Plaintiff emotional distress.

95. During the meeting on June 11, 2020, the Defendants representatives demanded that Mumma refute or repudiate the positions she had expressed in the posted Facebook meme.

96. Mumma was accused of causing harm to others based solely on the exercise of her Constitutional rights.

97. During her tenure working for the Defendants, Mumma was exposed to numerous social media posts, memes, Tweets, and other discussions among employees that were personally offensive to her religious, social and political beliefs.

98. She endured those personally offensive statements because she understood that the Defendants' employees were allowed to express their personal, social, political, and religious viewpoints without fear of reprisal or discipline.

99. She was disheartened and distressed to learn that, in fact, only employees who maintained certain accepted social, political, and/or religious viewpoints were allowed to express those viewpoints without fear of reprisal or discipline.

{!02004583.DOCX; v.}15

SUISMAN, SHAPIRO, WOOL, BRENNAN, GRAY & GREENBERG, P.C.   THE COURTNEY BUILDING, SUITE 200, 2 UNION PLAZA, POST OFFICE BOX 1591
NEW LONDON, CONNECTICUT 06320   TEL. (860) 442-4416   JURIS NO. 62114

100. In order to maintain her employment, the Defendants demanded that Mumma refute her personal, religious and political views that did not comport with the accepted ideology of the Defendants.

101. Mumma refused to do so and was terminated as a result thereof.

102. The Plaintiff's emotional distress was foreseeable as the Defendant was fully aware of her vulnerability and the impact its actions were having upon her.

103. The Plaintiff has been caused to suffer severe emotional distress as a result of the Defendant's conduct.

### XI.   PRAYER FOR RELIEF

WHEREFORE, the Plaintiff prays for relief as follows:

1. lost wages and benefits;
2. future wages and benefits;
3. non-economic damages (i.e., emotional distress)
4. punitive damages;
5. attorneys' fees and costs;
6. interest; and
7. such other relief as the Court deems equitable.

{!02004583.DOCX; v.}16

SUISMAN, SHAPIRO, WOOL, BRENNAN, GRAY & GREENBERG, P.C.   THE COURTNEY BUILDING, SUITE 200, 2 UNION PLAZA, POST OFFICE BOX 1591
NEW LONDON, CONNECTICUT 06320   TEL. (860) 442-4416   JURIS NO. 62114

Respectfully submitted,

THE PLAINTIFF,
CANDICE MUMMA

By: /s/ ct23807
Theodore W. Heiser, ct23807
Suisman, Shapiro, Wool, Brennan,
Gray & Greenberg, P.C.
2 Union Plaza, Suite 200
P.O. Box 1591
New London, CT 06320
Phone: (860) 442-4416
Facsimile: (860) 442-0495
theiser@sswbgg.com

{!02004583.DOCX; v.}17

SUISMAN, SHAPIRO, WOOL, BRENNAN, GRAY & GREENBERG, P.C.   THE COURTNEY BUILDING, SUITE 200, 2 UNION PLAZA, POST OFFICE BOX 1591
NEW LONDON, CONNECTICUT 06320   TEL. (860) 442-4416   JURIS NO. 62114